IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| RHN CORPORATION, a Utah corporation,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br><br>BOX ELDER COUNTY,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION AND DENYING DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS<br><br><br><br><br><br>Case No. 1:03-CV-00064 PGC |

The parties in this zoning dispute have previously settled their claims and jointly moved to dismiss the suit. Both plaintiff RHN Corporation and the lone remaining defendant, Box Elder County, now move for their respective attorneys' fees and costs. Under controlling legal authority, no such costs or fees are appropriate. Accordingly, the court DENIES RHN's motion for attorneys' fees (#51) and DENIES Box Elder County's motion for attorneys' fees (#50).

## BACKGROUND

RHN's claims arose out of Box Elder County's refusal to re-zone certain property. Specifically, RHN brought a 42 U.S.C. § 1983 claim alleging that the Box Elder County Planning Commission violated a number of its constitutional rights by refusing to re-zone RHN's

property. RHN originally named as defendants four individual employees of Box Elder County in their official capacities, as well as the Box Elder County Planning Commission, the Board of County Commissioners of Box Elder County, and Box Elder County itself. The court granted a motion to dismiss the individually named plaintiffs because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."[1] The court also granted a motion to dismiss the Board of County Commissioners and the Box Elder County Planning Commission because, as the defendants argued, "neither the Board of Box Elder County Commissioners nor the Box Elder County Planning Commission are separate legal entities independent of [the County]."[2] This left Box Elder County as the only defendant. RHN and Box Elder County eventually stipulated to dismissal of the case after Box Elder County re-zoned the properties at issue in this case.

RHN now seeks attorneys' fees under 42 U.S.C. § 1988(b),[3] because that statute "specifically permits the [c]ourt, in its discretion, to award reasonable attorneys fees and costs to a prevailing party in a civil rights action brought under 42 U.S.C. § 1983."[4] RHN claims that it is "a prevailing party because this suit was a significant factor in [the County] amending its zoning classifications of [RHN's] property and because [RHN's] claims were not frivolous or

---

[1] *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

[2] The Board of County Commissioners of Box Elder County and the Box Elder County Planning Commission's Combined Motion to Dismiss and Memorandum in Support, at 5 (Sept. 9, 2004).

[3] 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee as part of the costs.").

[4] RHN's Memo. for Attorney Fees and Costs, at 1-2 (Oct. 19, 2005).

groundless and the County's action in re-zoning the property was not wholly gratuitous."[5] RHN requests reasonable attorneys' fees in the amount of $34,397.50 and costs in the amount of $2,083.97.

In response, the County denies that fees for RHN are appropriate. It argues that, because of the settlement, there was never any judicial determination that RHN had meritorious claims and that the re-zoning of the property did not result from this lawsuit. Indeed, the County contends *it* should receive attorneys' fees and costs because it prevailed on both its motion to dismiss the named individual defendants and on its motion to dismiss defendants Board of County Commissioners of Box Elder County and the Box Elder County Planning Commission. Specifically, the County seeks $8,792.50 in reasonable attorneys' fees.

## DISCUSSION

*A. RHN's Attorneys' Fees and Costs Motion*

The court begins with the relevant statute. The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, states in part: "In any action or proceeding to enforce a provision of . . . [42 U.S.C. §] 1983 . . ., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."[6] So it is clear that a "prevailing party in a 42 U.S.C. § 1983 action may be entitled to reasonable costs and attorneys' fees."[7]

---

[5] *Id*. at 2.

[6] 42 U.S.C. § 1988.

[7] *Clajon Prod. Corp. v. Petera*, 70 F.3d 1566, 1581 (10th Cir. 1995).

Because the suit ended without a judgment on the merits, the pivotal issue here is whether RHN is a "prevailing party." "[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, . . . or comparable relief through a consent decree or settlement."[8] And under the Supreme Court's "generous formulation of the term, plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."[9] "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."[10]

RHN observes that despite the lack of an actual judgment in its favor, a plaintiff may still be deemed a prevailing party where it has received the action it sought.[11] Of course, "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail."[12] But according to the Supreme Court's decision in *Hewitt v. Helms*, a "lawsuit sometimes produces voluntary action by the defendant that affords

---

[8]*Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (citing *Hewitt v. Helms*, 482 U.S. 755, 763 (1987) and *Maher v. Gagne*, 448 U.S. 122, 129 (1980)).

[9]*Farrar*, 506 U.S. at 109 (internal quotations omitted).

[10]*Id*. at 111-12.

[11]*Hewitt*, 482 U.S. at 760-61; *Ellis v. Univ. of Kansas Med. Cent.*, 163 F.3d 1186, 1194 (10th Cir. 1998).

[12]*Hewitt*, 482 U.S. at 760.

the plaintiff all or some of the relief he sought through a judgment – *e.g.*, a monetary settlement or a change in conduct that redresses the plaintiff's grievances.  When that occurs, the plaintiff is deemed to have prevailed despite the absence of a formal judgment in his favor."[13]

RHN also cites Tenth Circuit case law for the proposition that if a defendant unilaterally undertakes an action that moots a suit, a plaintiff may still recover attorneys' fees.[14]  Under the "catalyst test" in the Tenth Circuit, "the party claiming 'prevailing party' status [must] show: (1) the legal action [taken by the defendant] is causally linked to securing the relief obtained [by the plaintiff]; and (2) the defendant's conduct in response to the [suit filed by the plaintiff] was required by law rather than a gratuitous response to a frivolous or groundless action."[15]  The "catalyst test" presupposes an actual settlement agreement between the parties, however, especially because such a settlement agreement is said to "materially alter[] the legal relationship between the parties."[16]

RHN's overarching argument is that it is a "prevailing party" because the County took action in its favor and because all of the prongs of the "catalyst test" are satisfied.  RHN contends that it had a settlement agreement with the County that it would dismiss its suit if the County re-zoned the property.  It is unclear to the court, however, as to whether a settlement agreement exists.  It is clear that the parties stipulated to dismissal with prejudice after the County re-zoned

---

[13] *Id*. at 760-61 (citing *Maher*, 448 U.S. at 129).

[14] *Ellis*, 163 F.3d at 1198-99.

[15] *Id*. at 1194.

[16] *Id*.

plaintiff's property.  RHN represents that it agreed to dismiss its lawsuit if the County re-zoned the property, but the court only has the general statements of the plaintiff's attorney to that effect.[17]  A document representing the settlement agreement between the parties is nowhere in the record.  Absent such an agreement, the court analyzes the actual statements made by the parties.

The Planning Commission meeting minutes do not support RHN's contention regarding settlement.   Those minutes state that the "rezone was required to correct 'several non-conforming uses in the area.'"[18]  Moreover, the minutes do not reflect litigation as the impetus for the re-zoning decision.  Instead, the minutes state that "[t]his re-zone is being initiated by the County (Box Elder) without an outside (or property owner) petition.  There was a re-zone petition some time ago, but it was never acted upon and this process should take care of that action."[19]

Despite these proffered minutes, RHN maintains that the real reason for the re-zoning was its lawsuit.  The plaintiff's attorney's submitted affidavit states that "[i]n April, 2005, counsel for [the County] . . . approached me and asked if [RHN] would be willing to drop its claims in this case if its property were re[-]zoned to allow it to be used for residential purposes."[20]  Such affidavit would appear to be strong evidence that RHN's actions were, at least

---

[17]RHN's Reply Memo. for Attorney Fees and Costs, Ex. A at 2 (Nov. 28, 2005) (Affidavit of Larry Jenkins).

[18]RHN's Memo. for Attorney Fees and Costs, Ex. B at 2 (Oct. 15, 2005) (Minutes of Box Elder County Planning Commission, May 19, 2005).

[19]*Id*.

[20]RHN's Reply Memo., Ex. A at 2 (Affidavit of Larry Jenkins).

in part, the catalyst for the re-zoning. RHN also argues that its lawsuit need not be the sole reason for County changing its behavior in order for the suit to be the catalyst for change.

RHN persuasively demonstrates how its suit might have been a catalyst in receiving its desired outcome. Due to the pending lawsuit and the timing of the County Commission meeting, RHN proffers a "sequence of events that demonstrates that this litigation was a 'substantial factor' in motivating the County"[21] to re-zone the property in question. RHN also has shown that the County's action was "required by law" through a legal memorandum and thus "satisfies the second prong of the catalyst test."[22]

The court questions, however, the viability of the "catalyst test" for prevailing party status on 42 U.S.C. § 1988 requests for attorneys' fees and costs after the Supreme Court's decision in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*.[23] In *Buckhannon*, the Court analyzed the denial of attorneys' fees under 42 U.S.C. § 3613(c)(2)[24] and 42 U.S.C. § 12205.[25] Although specifically discussing these two statutes, the Court noted that "[n]umerous federal statutes allow courts to award attorney's fees and costs to

---

[21]RHN's Memo. In Support of Attorneys' Fees, at 8.

[22]*Id*. at 9-10.

[23]532 U.S. 598 (2001).

[24]Fair Housing Amendments Act of 1988 ("The court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs.").

[25]American with Disabilities Act of 1990 ("The court . . ., in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs.").

the 'prevailing party,'"[26] and specifically discussed both 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988 with regard to the "prevailing party" definitions.[27]  That Court also noted that any previous reliance on *Hewitt* for using the "catalyst theory" to determine "prevailing party" status for attorneys' fees was unavailing, because *Hewitt* "expressly reserved the question" as to "whether the term 'prevailing party' allows an award of fees under the 'catalyst theory.'"[28]

*Buckhannon* also explicitly noted that "most Court of Appeals recognize the 'catalyst theory,'" citing as an example the Tenth Circuit's decision in *Beard v. Teska*.[29]  *Beard* dealt with attorneys' fees awarded from an action brought under 42 U.S.C. § 1983, 20 U.S.C. § 1400, and 29 U.S.C. § 794.[30]  In *Beard*, the Circuit analyzed 42 U.S.C. § 1988(b) attorneys' fees awards under the "catalyst theory," stating that such a theory was still viable despite the Supreme Court's holding in *Farrar v. Hobby*.[31]  Although the Tenth Circuit noted that it was "true that some language in *Farrar* . . . could be read as rendering any 'catalyst' theory nonviable as a basis for awarding fees for a lawyer's services that do not produce 'an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or

---

[26]*Buckhannon*, 532 U.S. at 600.

[27]*Id.* at 602-03.

[28]*Id.* at 603 n.5.

[29]*Id.* at 602 n.3 (citing 31 F.3d 942, 951-52 (10th Cir. 1994)).

[30]*Beard*, 31 F.3d at 944.

[31]*Id.* at 951-52.

settlement,'" it did not agree with such a reading.[32]  In citing to *Beard* and explicitly holding that the "catalyst theory" was not a permissible basis for the award of attorneys' fees under the FHAA and the ADA, *Buckhannon* seemingly casts serious doubt on the viability of such a theory for § 1988 attorneys' fees in the Tenth Circuit.

In sum, the court has clear Supreme Court precedent which explicitly overrules the "catalyst theory" for two attorneys' fees statutes which mirror the statute at issue.  The statutory definitions of attorneys' fees for the Fair Housing Amendment Act[33] and the Americans with Disabilities Act,[34] closely mirror § 1988's statement that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."[35]  Also, *Buckhannon* clearly commented on a Tenth Circuit "catalyst theory" case involving § 1988 when it noted "most Courts of Appeals recognize the 'catalyst theory'" and citing to *Beard*.[36] And *Buckhannon* explicitly rejected the notion that "the catalyst theory is necessary to prevent defendants from unilaterally mooting an action before judgment in an effort to avoid an award of attorney's fees, [or that the] rejection of the catalyst theory will deter plaintiffs with meritorious but expensive

---

[32]*Id*. at 951 (citing *Farrar*, 506 U.S. at 111-12).

[33]42 U.S.C. § 3613(c)(2) ("The court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs.").

[34]42 U.S.C. § 12205 ("The court . . ., in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses and costs.").

[35]42 U.S.C. § 1988(b).

[36]*Buckhannon*, 532 U.S. at 601-02 & n.3.

cases from bringing suit."[37] Rather, it held that if "a case is not found to be moot, and the plaintiff later procures an enforceable judgment, the court may of course award attorney's fees. Given this possibility, the defendant has a strong incentive to enter a settlement agreement, where it can negotiate attorney's fees and costs."[38]

Although discussing different statues, the Supreme Court's rejection of the "catalyst theory" appears to apply to § 1988 attorneys' fees actions as well. The statutes are quite similar, all stating that the court, in its discretion, may award attorneys' fees and costs to the "prevailing party."[39] *Buckhannon* specifically mentioned the Tenth Circuit's *Beard* decision for the proposition that many circuits approve of the catalyst theory.[40] And the *Buckhannon* Court, after discussing the policy implications of the "catalyst theory" in general *and* the legislative history of § 1988, held that the "catalyst theory" was not a permissible basis for the award of attorneys' fees under the statutes at issue.[41] Such a decision appears to indicate that the "catalyst theory" is not a viable basis for obtaining attorneys' fees under 42 U.S.C. § 1988 for a suit that does not result in a judgment or an agreement that materially alters the legal relationship of the parties.

---

[37]*Id*. at 608.

[38]*Id*. at 609.

[39]*Compare* 42 U.S.C. § 3613(c)(2) ("The court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs.") *and* 42 U.S.C. § 12205 ("The court . . ., in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses and costs.") *with* 42 U.S.C. § 1988(b) ("The court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.").

[40]*Buckhannon*, 532 U.S. at 601-02 & n.3.

[41]*See id*. at 608-10 (policy implications); 607-08 (legislative history of § 1988).

Other circuits have held that the Supreme Court's reasoning in *Buckhannon* applies to fee-shifting statutes that discuss the "prevailing party" status. In *New England Regional Council of Carpenters v. Kinton*, the First Circuit applied *Buckhannon* to 42 U.S.C. § 1988, holding that "the Supreme Court thwarted [the plaintiffs'] initiative [to use the catalyst theory] when it recently consigned the catalyst theory to the scrap heap."[42] In *Bennett v. Yoshina*, the Ninth Circuit also applied *Buckhannon* to 42 U.S.C. § 1988, stating that "[t]here can be no doubt that the Court's analysis in *Buckhannon* applied to statutes other than the two at issue in that case."[43] It went on to note that the Supreme Court had cited § 1988 as a "nearly identical [fee-shifting] provision" and that the Court noted it has "interpreted Congress's various fee-shifting provisions consistently."[44] So, the Ninth Circuit held that the "catalyst theory no longer applies to [42 U.S.C. § 1988], and any of our precedents to the contrary are overturned."[45] Along these same lines, the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits have concluded that the *Buckhannon* analysis applies to claims for fees under 42 U.S.C. § 1988.[46]

---

[42]284 F.3d 9, 30 (1st Cir. 2002); *see also Doe v. Boston Pub. Schs.*, 358 F.3d 20, 24-25 (1st Cir. 2004) ("As the district court noted, the principles underlying *Buckhannon*'s holding are broadly stated and not statute specific").

[43]259 F.3d 1097, 1100 (9th Cir. 2001).

[44]*Id*. at 1100-01.

[45]*Id*. at 1101.

[46]*See N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester County Taxi*, 272 F.3d 154, 158-59 (2d Cir. 2001); *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 165-66 (3d Cir. 2002); *Smyth v. Rivero*, 282 F.3d 268, 274-78, 280-82 (4th Cir. 2002); *Walker v. City of Mesquite*, 313 F.3d 246, 249-51 (5th Cir. 2002); *Toms v. Taft*, 338 F.3d 519, 528-30 (6th Cir. 2003); *Cody v. Hillard*, 304 F.3d 767, 772 (8th Cir. 2002); *Alliance to End Repression v. City of Chicago*, 356 F.3d 767, 769, 771 (7th Cir. 2004); *Smalbein v. City of Daytona Beach*, 353 F.3d 901, 904-05

And the D.C. Circuit has applied *Buckhannon* to the fee-shifting statutes of the Freedom of Information Act[47] and the Equal Access to Justice Act.[48]

All that is left is the Tenth Circuit.  Although not explicitly adopting the *Buckhannon* analysis to 42 U.S.C. § 1988, the Tenth Circuit has remarked on *Buckhannon*'s applicability on other fee-shifting statutes.  In an unpublished opinion in *Scherer v. United States*, that court noted that although "*Buckhannon* involved the prevailing party provisions in the Fair Housing Amendment Act, . . . and the Americans with Disabilities Act, . . . the holding of the case applies with equal force to the prevailing party provisions in [the Equal Access to Justice Act]."[49]  In *Center for Biological Diversity v. Norton*, the Tenth Circuit discussed *Buckhannon*'s holding on "the term 'prevailing party,'" but held that 16 U.S.C § 1540(g)(4) did not contain the "express requirement that the party seeking attorney's fees be the 'prevailing party.'"[50]  In *Amigos Bravos v. EPA*, the Tenth Circuit concluded that plaintiffs could not recover their costs *even if* the "catalyst theory" applied, noting *Buckhannon*'s potential foreclosure of the "catalyst theory," but declining to decide whether *Buckhannon* actually applied to the fee-shifting provisions of 33 U.S.C. § 1365(d).[51]  And in *Griffin v. Steeltek, Inc.*, the court applied *Buckhannon* to a plaintiff's

---

(11th Cir. 2003).

[47]*Oil, Chemical & Atomic Workers Int'l Union v. Dep't of Energy*, 288 F.3d 452, 455 (D.C. Cir. 2002).

[48]*Thomas v. Nat'l Science Found.*, 330 F.3d 486, 488-89 (D.C. Cir. 2003).

[49]88 Fed. Appx. 316, 320 (10th Cir. 2004) (unpublished opinion).

[50]262 F.3d 1077, 1080 n.2 (10th Cir. 2001) (internal quotations and citations omitted).

[51]324 F.3d 1166, 1170-71 (10th Cir. 2003).

request for attorneys' fees and costs under 42 U.S.C. § 12205, one of the statutes at issue in the *Buckhannon* decision.[52]  But the Tenth Circuit, unlike virtually every other circuit in the country, has not yet clearly applied *Buckhannon* to § 1988 attorneys' fees and costs requests.  The court views this, however, as only a matter of time.

To this court, it is clear that *Buckhannon* applies to 42 U.S.C. § 1988.  Given both the relevant case law from this and other circuits, and the clear reading of the relevant statutes in *Buckhannon* compared with the statute at issue in this case, the court holds that *Buckhannon* applies to RHN's "catalyst theory" arguments under § 1988.  Since the Supreme Court has explicitly denigrated the "catalyst theory," this court will follow its holding and deny attorneys' fees and costs to RHN under the "catalyst theory."  RHN has failed to present a "corresponding alteration in the legal relationship of the parties"[53] through its suit, especially as there is no actual settlement agreement between the parties nor any other legal relationship between the parties.  As such, RHN has not shown that it is a prevailing party by any method other than the "catalyst theory," and the court denies RHN's motion for attorneys' fees and costs under 42 U.S.C. §1988.

*B. The County's Motion for Attorneys' Fees*

The County requests attorneys' fees for its two meritorious motions: the first one dismissing four individually-named defendants, and the second dismissing the Board of County Commissioners of Box Elder County and the Box Elder County Planning Commission.  It argues that RHN's complaint, that included the individual defendants, was "frivolous, unreasonable, or

---

[52] 261 F.3d 1026, 1029 (10th Cir. 2001).

[53] *Buckhannon*, 532 U.S. at 605.

groundless."[54] The County argues this because RHN conceded that "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity," and because RHN cited no authority in support of its arguments against dismissal.[55]  The County also argues that RHN's insistence on keeping the Board of County Commissioners and the Planning Commission as defendants was groundless, because RHN conceded that the defendants were not persons under 42 U.S.C. § 1983 and RHN did not cite any case law to dispute the defendants' contention that the Commission and the Commissioners were not separate entities capable of being sued.[56]  RHN contends that although it did attempt to keep the above defendants in the suit, it did so only because it would provide discovery advantages and ensure all the entities were treated alike, so therefore it had no real reason to dismiss the entities.

The Tenth Circuit has held that "[w]hile a prevailing plaintiff is entitled to attorney fees, . . . a prevailing defendant in a civil rights action may recover attorney fees only if the suit was vexatious, frivolous, or brought to harass or embarrass the defendant."[57]  The defendants prevailed only on several peripheral motions, rather than on the lawsuit itself.  And the entire suit was clearly not vexatious, frivolous, or brought to harass or embarrass the defendants.  The standard for awarding attorneys' fees to a defendant "is a difficult standard to meet, to the point

---

[54] *See Browder v. City of Moab*, 427 F.3d 717, 721 (10th Cir. 2005).

[55] The County's Memo. In Support of Attorneys' Fees, at 5-6 (Oct. 19, 2005).

[56] *Id*. at 6.

[57] *Mitchell v. City of Moore*, 218 F.3d 1190, 1203 (10th Cir. 2000) (citations and internal quotations omitted).

that rarely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff."[58] The County has failed to demonstrate the frivolous nature of RHN's case, and has failed to show that the County's motions had any real legal consequence to the ultimate resolution of the case. Accordingly, the County's motion for attorneys' fees and costs is denied.

## CONCLUSION

For all these reasons, the court DENIES RHN's motion for attorneys' fees (#51) and DENIES Box Elder County's motion for attorneys' fees (#50).

DATED this 27th day of February, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge

---

[58]*United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1059 (10th Cir. 2004) (internal quotations omitted).